Howard L. HAUPT, Plaintiff–Appellant,

v.

T.D. DILLARD, Robert Leonard; Las Vegas Metropolitan Police Department; City of Las Vegas, Nevada and Clark County, Nevada, Defendants–Appellees.

No. 92–15966.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Feb. 25, 1994.

As Amended April 15, 1994.

William F. Gary, James E. Mountain, Jr., Harrang, Long, Watkinson, Arnold & Laird, Eugene, OR, for plaintiff-appellant.

James R. Olson, Peter M. Angulo, Walter R. Cannon, Rawlings, Olson & Cannon, Las Vegas, NV, for defendants-appellees.

Appeal from the United States District Court for the District of Nevada, Philip M. Pro, District Judge, Presiding.

Before: CANBY, and NOONAN, Circuit Judges, and ORRICK,* District Judge.

## OPINION

CANBY, Circuit Judge:

On November 27, 1987, seven-year-old Alexander Harris disappeared from the video game arcade at Whiskey Pete's Hotel and Casino in Stateline, Nevada, where he had

* The Honorable William H. Orrick, Jr., Senior United States District Judge for the Northern District of California, sitting by designation.

been left by his parents while they went to the casino to gamble. Approximately one month later, his body was discovered beneath a trailer on the casino grounds. An autopsy revealed that he had been murdered on or about the date of his disappearance.

Defendants Dillard and Leonard, detectives with the Las Vegas Metropolitan Police Department, were assigned to investigate. After a two-month investigation, they obtained and executed a warrant for Haupt's arrest, charging him with the kidnapping and murder of Alexander Harris. The case was tried to a jury, and Haupt was acquitted of all charges.

Following his acquittal, Haupt brought this action in federal district court pursuant to 42 U.S.C. § 1983, claiming that during the course of their investigation and Haupt's subsequent trial, the defendants violated his federal constitutional rights (a) to be free from unreasonable searches and seizures, (b) to be free from malicious prosecution, and (c) to a fair and impartial trial.[1] He also included claims under Nevada law for defamation, false imprisonment, and intentional infliction of emotional distress. The district court granted summary judgment for the defendants on Haupt's federal claims, and then, *sua sponte*, dismissed Haupt's state claims for lack of jurisdiction. 794 F.Supp. 1480.

We reverse the district court's judgment as to Haupt's fair trial and pendent state claims, and affirm as to Haupt's Fourth Amendment and malicious prosecution claims.

## DISCUSSION

We review *de novo* a district court's grant of summary judgment. *Forster v. County of Santa Barbara*, 896 F.2d 1146, 1147 (9th Cir.1990).

1. In his complaint, Haupt also alleged separate violations of his right to "freedom from unduly suggestive photo identifications," and his "right to have an attorney present during an interrogation." The district court analyzed these claims individually and granted summary judgment for defendants as to each. On appeal, Haupt treats these not as separate claims, but as an integral

## I: Haupt's Due Process Claim

■ We address Haupt's claim of denial of fair trial first because we deem it the most important. In the course of reviewing jury instructions at the close of evidence, the judge presiding at Haupt's criminal trial indicated to counsel that he intended to give the jury an instruction advising acquittal. The deputy district attorney responded by arguing with the judge and stating, among other things, that the "blood of Alexander Harris" would be on the judge's hands if he proceeded to give that instruction. The following day, defendant Dillard telephoned the judge to argue against the jury instruction, telling him that giving it was "ridiculous." Before charging the jury, the judge stated, for the record, that he felt "threatened" and "intimidated" by Dillard and the deputy district attorney, and "because of that [he did] not dare now give the advisory verdict of acquittal."

Despite the evidence of this egregious behavior, the district court granted summary judgment for defendants on Haupt's claim that this incident violated his due process right to a fair and impartial trial. The district court held that "the fact that [Haupt] was ultimately acquitted conclusively shows that he received a fair trial." But the acquittal does not erase all injury.

■ The right to a fair trial is "a basic requirement of due process" and includes the right to an unbiased judge. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Here, Haupt charges that defendants intimidated the judge into changing his jury instructions. If this allegation is true, Haupt did not get the unbiased judge to which he was entitled. The fact that Haupt ultimately was acquitted speaks only to the amount of damages he suffered; it is irrelevant to whether he has a cause of action. We dealt with an analogous situation in *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir.1992)

part of his claim of malicious prosecution. Because he does so, we do likewise. Inasmuch as we reject Haupt's malicious prosecution claim, and Haupt offers no independent challenge to the district court's summary judgment regarding these other two claims, we affirm as to these claims as well.

(en banc), where we held that interrogation of a suspect in violation of his *Miranda* rights was actionable even though the suspect was never charged and the resulting statement was never used; those facts were "relevant only to damages, not to whether he has a civil cause of action in the first place." *Id.* at 1245; *see also, Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (violation of right to procedural due process actionable without proof of actual injury).

*Venegas v. Wagner,* 704 F.2d 1144 (9th Cir.1983), upon which the district court relied, is not to the contrary. *Venegas* stands only for the proposition that, when a plaintiff alleges violation of his right to a fair trial and that violation resulted in a conviction, the conviction is the *primary* injury and the statute of limitations does not begin to run until the primary injury has occurred. *Id.* at 1146.

Here, there was no conviction, and the alleged violation of Haupt's due process rights was complete when the trial judge changed his jury instructions because of defendants' intimidation.

> [E]very procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.

*Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927). The district court erred in ruling that Haupt's acquittal defeated his claim for denial of due process as a matter of law.

## II: Haupt's Unreasonable Search and Seizure Claim

Haupt alleges that Dillard and Leonard violated his rights under the Fourth Amendment when they secured a warrant for his arrest on the basis of an affidavit that they knew contained false statements and which they knew omitted facts tending to show his innocence. If Dillard and Leonard in fact had probable cause to arrest Haupt, then they are immune from suit. *See Forster,* 896 F.2d at 1148. On this basis, the district

court granted summary judgment for defendants, finding that probable cause to arrest Haupt had been conclusively determined during his state criminal prosecution. The court held Haupt to be collaterally estopped from relitigating the issue. Haupt objects to the district court's finding of collateral estoppel on several grounds. We review that finding *de novo, C.D. Anderson & Co., Inc. v. Lemos,* 832 F.2d 1097, 1100 (9th Cir.1987), and we affirm.

In Nevada, a litigant is estopped from raising an issue in a subsequent proceeding if (1) the issue was "actually litigated" and "necessarily determined" in the prior proceeding, and (2) the parties in the two proceedings were the same or in privity. *Marine Midland Bank v. Monroe,* 756 P.2d 1193, 1194 (Nev.1988). If Nevada courts, applying these requirements, would preclude Haupt from relitigating the issue of probable cause, then he is similarly precluded in federal court provided that he had a full and fair opportunity to litigate the issue in the prior proceeding. *See Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

Haupt's first objection is that the probable cause determination at the criminal preliminary hearing was an interlocutory ruling, and therefore can have no preclusive effect under Nevada law. *See Bull v. McCuskey,* 96 Nev. 706, 615 P.2d 957, 960 (1980) ("The doctrine of collateral estoppel is not concerned with interlocutory rulings."); *Luben Industries Inc. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983) (ruling has no preclusive effect if it is "avowedly tentative"). We disagree with Haupt's contention. The probable cause determination at his preliminary hearing was not interlocutory in any meaningful sense; it was, rather, a final, conclusive determination of the issue. Unlike a truly interlocutory ruling (such as the denial of a motion for summary judgment at issue in *Bull v. McCuskey*), the probable cause determination was immediately appealable (in the form of a petition for a writ of habeas corpus).[2] Also unlike a truly interloc-

**2.** Indeed, Haupt took advantage of this opportunity, and filed a habeas petition in Nevada District Court, alleging lack of probable cause. The district judge found that there was probable

utory ruling, the probable cause determination, once made and affirmed via denial of habeas corpus, could not be further litigated; except in the context of a motion to suppress, Haupt could not have raised the issue again at trial or on appeal from a verdict. *See Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) (lack of probable cause to arrest is no defense to a criminal conviction). Thus, we conclude that the probable cause determination at Haupt's preliminary hearing, affirmed by denial of his petition for a writ of habeas corpus, was sufficiently conclusive of the issue to preclude its relitigation. *See Luben,* 707 F.2d at 1040 (to be final determination for collateral estoppel purposes, determination does not have to be final judgment, but merely "sufficiently firm to be accorded conclusive effect").

▆ Next, Haupt argues that because he was acquitted, and because the probable cause determination at his preliminary hearing was not necessary to support that judgment, the issue was not "necessarily decided," as required by Nevada law. In fact, the probable cause determination *was* necessary to the judgment; the sole purpose of the preliminary hearing was to determine whether Haupt should have been bound over for trial. But for the probable cause determination, there would have been no trial and no judgment of acquittal. *See* 18 Wright, Miller, & Cooper *Federal Practice and Procedure* 327 (1981) ("Necessity should be measured by the progress of the first proceedings that led to the first determination").[3]

▆ Haupt next objects that the issue determined at the preliminary hearing was different from the issue of probable cause for his arrest, so that collateral estoppel cannot apply. Yet the issues are .different only in the sense that probable cause for his arrest involves reference to the evidence that was

or should have been presented to the magistrate, while probable cause to bind Haupt over involves reference to the evidence available to the court at the preliminary hearing. This difference *may* be significant in some cases. For instance, if after arrest but before the preliminary hearing additional evidence of a defendant's guilt is discovered, and that evidence is presented at the preliminary hearing, the probable cause determination at the hearing would not be conclusive as to whether there was probable cause to arrest.

▆ Here, however, Haupt adverts to no evidence adduced at his preliminary hearing that was not available to the defendant officers when they obtained his arrest warrant. We conclude, therefore, that the issue determined at his preliminary hearing is identical to the issue whether there was probable cause to arrest him; both involved a determination that the evidence available and known to the officers at the time of his arrest supported a reasonable belief that Haupt committed the offenses charged. *See, e.g., Guenther v. Holmgreen,* 738 F.2d 879 (7th Cir. 1984) (same), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985).

▆ Finally, Haupt argues that tactical considerations prevented his attorney from vigorously pursuing the issue of probable cause during his criminal prosecution, and hence he did not have a full and fair opportunity to litigate that question. We may assume that for tactical reasons a litigant may well choose not to litigate probable cause fully during a criminal prosecution, and that in such a case estoppel might be inappropriate. However, there is little evidence that this was the case here.

---

cause and denied the writ. Haupt could have appealed denial of the writ to the Nevada Supreme Court, but failed to do so.

**3.** That the determination was necessary to the judgment is further revealed by the fact that the rationale underlying the "necessary to the judgment rule" is inapplicable in this case. The rule is important in cases where an adverse ruling is not necessary to the final judgment, because a party will have no incentive or opportunity to

appeal it. *See Fireman's Fund Ins. Co. v. International Market Place,* 773 F.2d 1068, 1069 (9th Cir.1985); *Pachaly v. City of Lynchburg,* 696 F.Supp. 180, 183 (W.D.Va.1988), *aff'd,* 897 F.2d 723 (4th Cir.1990). This rationale is inapplicable here for reasons already discussed: Haupt had the opportunity to appeal the ruling; he availed himself of that opportunity; and he could not have appealed the ruling after a final judgment even had he been convicted.

To support his contention, Haupt adverts to his attorney's deposition testimony that he primarily uses the preliminary hearing as a discovery device. While that may be true, it does not negate the fact that Haupt's attorney in fact vigorously fought the probable cause issue. During the preliminary hearing, he pointed out most of the deficiencies in the affidavit that Haupt raises in this appeal, and he sought a writ of habeas corpus to overturn the probable cause determination.

As further evidence of his inability to fully litigate the probable cause issue, Haupt points to his attorney's decision not to proceed with a motion to suppress certain testimony. The record shows that the motion to suppress was to be directed at the testimony of one of the witnesses who claimed she had seen Haupt with Alexander just prior to his disappearance. Yet every discrepancy between this witness' testimony and the content of the affidavit that Haupt now complains of was adduced in the preliminary hearing. Whatever tactical reasons Haupt's attorney might have had for not pursuing the motion to suppress did not have any effect on the evidence presented at the preliminary hearing.

We conclude that the requirements for collateral estoppel under Nevada law are satisfied, and that Haupt had a full and fair opportunity to litigate the issue of probable cause during the course of his criminal prosecution. Defendants are immune from suit on charges that they violated Haupt's rights under the Fourth Amendment.

## III: Haupt's Malicious Prosecution Claim

 Haupt's claim of malicious prosecution in violation of section 1983 is not well-defined. In part, he argues that the malicious prosecution consisted in prosecuting him in an unfair trial; in that sense, his claim merges with his due process claim, which we have dealt with above. To the extent that Haupt does focus on malicious prosecution, however, his challenge fails.[4] Our conclusion that Haupt is collaterally estopped from relitigating probable cause is dispositive of this claim as well. The district court held that to state a claim under section 1983 for malicious prosecution, Haupt must demonstrate not only deprivation of a constitutionally protected right, but also all of the elements of the tort under state law. Haupt has not taken issue with that particular proposition. Because lack of probable cause is an element of a claim of malicious prosecution in Nevada, see Chapman v. City of Reno, 85 Nev. 365, 455 P.2d 618, 620 (1969), and because Haupt is collaterally estopped from relitigating that issue, the district court properly granted summary judgment for the defendants.[5]

## IV: Haupt's State Tort Claims

After granting summary judgment for defendants on all of Haupt's federal claims, the district court, sua sponte, dismissed Haupt's three state tort claims for lack of jurisdiction, citing Schultz v. Sundberg, 759 F.2d 714, 718

4. The constitutional foundation for a claim of malicious prosecution under § 1983 is a matter of dispute. See Albright v. Oliver, — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Our disposition of Haupt's malicious prosecution claim makes it unnecessary for us to address that question.

5. The probable cause determination at the preliminary hearing would not be dispositive of the malicious prosecution claim in certain circumstances. Probable cause to continue a prosecution may disappear with the discovery of new exculpatory evidence after the preliminary hearing. In such a case, state actors who are made aware of this evidence but then suppress it may be liable for malicious prosecution under § 1983. See, e.g., Weg v. Macchiarola, 995 F.2d 15, 17–18 (2nd Cir.1993); Jones v. City of Chicago, 856 F.2d 985, 993–94 (7th Cir.1988). Haupt alleges

that five days prior to his trial a witness came forward and said she had seen Haupt's picture on television and he was not the man she had seen with Alexander at the casino on the day of his disappearance. Haupt asserts that Leonard and Dillard did not follow up on this lead "immediately," and that Leonard in fact tried to convince the witness that she was wrong.

A review of the record reveals that the appearance of this witness did not obviate probable cause to prosecute Haupt. The witness testified that her opinion was based on "a feeling" that Haupt had not committed the crime because he had "a lot to lose." This hardly amounts to significant, reliable, new evidence that might have put Leonard and Dillard on notice that they had the wrong man, or obviated probable cause to continue Haupt's prosecution.

(9th Cir.1985) (district court generally should dismiss pendent state claims following dismissal of all federal claims). There is no dispute that if the only basis for jurisdiction over Haupt's state claims were pendent jurisdiction, the dismissal was proper at the time. Haupt, however, argues that the district court overlooked the fact that 28 U.S.C. § 1332 (diversity jurisdiction) provides an independent basis for federal jurisdiction over his state claims.

Because the district court erred in dismissing Haupt's section 1983 claim for a violation of his right to a fair trial, we need not reach the issue of whether there was, in fact, jurisdiction under 28 U.S.C. § 1332. The district court, on remand, has pendent jurisdiction over Haupt's state law claims.

## CONCLUSION

We REVERSE the summary judgment as to Haupt's claim that defendants deprived him of his right to a fair and impartial trial, and REVERSE the order dismissing Haupt's state law claims. We AFFIRM the summary judgment on Haupt's Fourth Amendment and malicious prosecution claims, as well as the subsidiary claims concerning a suggestive photo identification and denial of right to an attorney during interrogation. Defendants' motion for attorney's fees is DENIED, and this case is REMANDED for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.